*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENISHIO JOHNSON,

        Plaintiff-Appellant,

v

CURTIS VANDERKOOI, ELLIOTT BARGAS,
and CITY OF GRAND RAPIDS,

        Defendants-Appellees.

FOR PUBLICATION
November 21, 2019
9:00 a.m.

No. 330536
Kent Circuit Court
LC No. 14-007226-NO

KEYON HARRISON,

        Plaintiff-Appellant,

v

CURTIS VANDERKOOI and CITY OF GRAND
RAPIDS,

        Defendants-Appellees.

No. 330537
Kent Circuit Court
LC No. 14-002166-NO

ON REMAND

Before: BOONSTRA, P.J., and O'BRIEN and LETICA, JJ.

BOONSTRA, P.J.

These consolidated appeals[1] are back before this Court on remand from our Supreme Court. The Supreme Court directed that we determine "whether [the challenged policies]

---

[1] See *Johnson v VanderKooi*, unpublished order of the Court of Appeals, issued November 30, 2018 (Docket Nos. 330536 & 330537).

violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures." *Johnson v VanderKooi*, 502 Mich 751, 780; 903 NW2d 843 (2017). We conclude, under current caselaw, that they did not, and that plaintiffs' Fourth Amendment rights were not violated by the on-site taking of photographs and fingerprints based on reasonable suspicion (i.e., during valid *Terry*[2] stops). We therefore affirm the trial court's orders granting summary disposition in favor of defendant City of Grand Rapids (the City) in these matters.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts underlying these appeals are set forth in detail in our previous opinions.[3] Our Supreme Court summarized the relevant underlying facts as follows:

These consolidated cases arise from two separate incidents where plaintiffs were individually stopped and questioned by Grand Rapids Police Department (GRPD) officers. During these stops, plaintiffs' photographs and fingerprints were taken in accordance with the GRPD's "photograph and print" (P&P) procedures. . . .

* * *

The P&Ps giving rise to these lawsuits took place during two separate incidents. At the time of the incidents, each GRPD patrol officer was assigned as a part of their standard equipment a camera, a fingerprinting kit, and GRPD "print cards" for storing an individual's copied fingerprints. Generally speaking, a P&P involved an officer's use of this equipment to take a person's photograph and fingerprints whenever an officer deemed the P&P necessary given the facts and circumstances. After a P&P was completed, the photographs were uploaded to a digital log. Completed print cards were collected and submitted to the Latent Print Unit. Latent print examiners then checked all the submitted fingerprints against the Kent County Correctional Facility database and the Automated Fingerprint Identification System. After being processed, the cards were filed and stored in a box according to their respective year.

The first incident giving rise to these lawsuits involved the field interrogation of plaintiff Denishio Johnson. On August 15, 2011, the GRPD received a tip that a young black male, later identified as Johnson, had been observed walking through an athletic club's parking lot and peering into vehicles. Officer Elliott Bargas responded to the tip and initiated contact with Johnson. Johnson, who had no identification, told Bargas that he was 15 years old, that he

---

[2] *Terry v Ohio*, 392 US 1, 30; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[3] See *Johnson v VanderKooi*, 319 Mich App 589; 903 NW2d 843 (2017); *Harrison v VanderKooi*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2017 (Docket No. 330537).

lived nearby, and that he used the parking lot as a shortcut. Bargas was skeptical of Johnson's story, and being aware of several prior thefts in and near the parking lot, he decided to perform a P&P to see if any witnesses or evidence would tie Johnson to those crimes. After Johnson's mother arrived and verified his name and age, Johnson was released. At some point during this process, Captain Curtis VanderKooi arrived and approved Bargas's actions. Johnson was never charged with a crime.

The second event occurred on May 31, 2012, after VanderKooi observed Keyon Harrison, a young black male, walk up to another boy and hand him what VanderKooi believed was a large model train engine. Suspicious of the hand-off, VanderKooi followed Harrison to a park. After initiating contact, VanderKooi identified himself and questioned Harrison. Harrison, who had no identification, told VanderKooi that he had been returning the train engine, which he had used for a school project. VanderKooi, still suspicious, radioed in a request for another officer to come take Harrison's photograph. Sergeant Stephen LaBrecque arrived a short time later and performed a P&P on Harrison, despite being asked to take only a photograph. Harrison was released after his story was confirmed, and he was never charged with a crime.

Johnson and Harrison subsequently filed separate lawsuits in the Kent Circuit Court, and the cases were assigned to the same judge. Plaintiffs argued, in part, that the officers and the City were liable pursuant to 42 USC 1983 for violating plaintiffs' Fourth and Fifth Amendment rights when the officers performed P&Ps without probable cause, lawful authority, or lawful consent. Both plaintiffs also initially claimed that race was a factor in the officers' decisions to perform P&Ps, though Johnson later dropped that claim.

In two separate opinions, the trial court granted summary disposition in favor of the City pursuant to MCR 2.116(C)(10) [no genuine issue of material fact] and in favor of the officers pursuant to MCR 2.116(C)(7) [governmental immunity], (10), and (I)(2) [opposing party entitled to judgment]. Plaintiffs individually appealed by right in the Court of Appeals. . . . [*Johnson v VanderKooi*, 502 Mich 751, 757-759; 903 NW2d 843 (2017) (footnote omitted).]

In our previous opinions, we affirmed the trial court's orders granting summary disposition in favor of the individual defendants and the City. *Johnson v VanderKooi*, 319 Mich App 589; 903 NW2d 843 (2017); *Harrison v VanderKooi*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2017 (Docket No. 330537). Relevant to the issue now before us on remand, we concluded in Part III of each opinion that "plaintiffs did not demonstrate that any of the alleged constitutional violations resulted from a municipal policy or a custom so persistent and widespread as to practically have the force of law," *Johnson*, 502 Mich at 760, and we therefore affirmed the trial court's orders granting summary disposition in favor of the City. See, e.g., *Johnson*, 319 Mich App at 626-628 (holding that "plaintiff did not establish a genuine issue of material fact that his alleged deprivation was caused by an unwritten custom or policy 'so persistent and widespread as to practically have the force of law.' "), quoting *Connick v*

*Thompson*, 563 US 51, 61; 131 S Ct 1350; 179 L Ed 2d 417 (2011). Plaintiffs thereafter filed a joint application for leave to appeal to our Supreme Court.[4]

Our Supreme Court directed that oral argument be scheduled on whether to grant the application or take other action, and ordered that the parties file supplemental briefs addressing "whether any alleged violation of the plaintiffs' constitutional rights were [sic] the result of a policy or custom instituted or executed by [the City]." *Johnson v VanderKooi*, 501 Mich 954; 905 NW2d 233 (2018). Subsequently, after supplemental briefing and oral argument, the Supreme Court reversed Part III of this Court's opinions, stating:

> In summary, we hold that it has been conclusively established by the City's concession that there exists a custom of performing a P&P during a field interrogation when an officer deems it appropriate. We further hold that, even without the City's concession as to the existence of a custom, the City's admissions, the officers' testimony, the GRPD manual, and the training materials, when viewed in the light most favorable to plaintiffs, are sufficient to create a genuine issue of material fact as to whether the City's custom has become an official policy. Genuine issues of material fact also remain concerning causation. Therefore, the Court of Appeals erred by affirming the trial court's order granting summary disposition based on the Court's conclusion that the alleged constitutional violations were not the result of a policy or custom of the City. We express no opinion with regard to whether plaintiffs' Fourth Amendment rights were violated. Therefore, we reverse Part III of the Court of Appeals' opinion in both cases. [*Johnson*, 502 Mich at 781.]

Because this Court, in its earlier opinions, had not reached the issue of whether plaintiffs' Fourth Amendment rights were violated by the P&P procedure, the Supreme Court remanded these cases to this Court "to determine whether the P&Ps at issue here violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures." *Id*. at 780. We subsequently issued an order directing the parties to file supplemental briefs "limited to issues in the scope of the remand from the Michigan Supreme Court."[5] The parties filed supplemental

---

[4] Plaintiffs did not challenge our holdings that the individual police officers were entitled to qualified immunity, that the P&Ps did not violate plaintiffs' rights under the Fifth Amendment, that the trial court properly struck each plaintiff's proposed expert witness and, in *Harrison*, that the record did not support the equal-protection claim. See *Johnson*, 502 Mich at 760 n 3. Additionally, plaintiffs did not challenge our holding in *Harrison* that the *Terry* stop in that case was itself valid, or our holding in *Johnson* that the trial court did not abuse its discretion by declining to read Johnson's general Fourth Amendment allegation as providing sufficient notice to defendants that he was asserting a challenge to the *Terry* stop in that case. These holdings stand as the law of the case. See *Bennett v Bennett*, 197 Mich App 497, 499; 496 NW2d 353 (1992).

[5] See *Johnson v VanderKooi*, unpublished order of the Court of Appeals, entered September 11, 2018 (Docket Nos. 330536 & 330537).

briefs in accordance with that order, and we have additionally considered the arguments presented in those briefs.

## II. STANDARD OF REVIEW

We review de novo preserved questions of constitutional law. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 685; 819 NW2d 28 (2011).

## III. ANALYSIS

## A. FRAMING THE ISSUE BEFORE US

Our Supreme Court directed us to determine on remand "whether the P&Ps at issue here violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures." *Johnson*, 502 Mich at 781. The question before us, therefore, is whether the P&Ps were constitutionally permissible. In answering that question, it is necessary first to precisely identify the nature of plaintiffs' claim relating to the P&Ps. Indeed, our Supreme Court has already done so, describing plaintiffs as arguing "that the record demonstrated that the City had a policy or custom of performing P&Ps without probable cause during investigatory stops . . ., which may be based on reasonable suspicion of criminal conduct, and that execution of that policy or custom violated their Fourth Amendment rights." *Johnson*, 501 Mich at 760. In other words, the linchpin of plaintiffs' claim was, is, and remains that the City's policy or custom was unconstitutional because it allowed P&Ps to be conducted on the basis of reasonable suspicion alone, rather than on the more stringent requirement of probable cause. And in their supplemental briefs in this Court, plaintiffs similarly encapsulated their constitutional argument as follows: "Taking fingerprints without consent is a Fourth Amendment search, and thus unconstitutional when performed as part of a *Terry* stop without probable cause."[6]

---

[6] It is worth noting that the policy or custom at issue, i.e., conducting P&Ps based on reasonable suspicion alone, does not even come into play when probable cause to arrest a suspect exists. Probable cause to arrest (and to therefore conduct searches incident to arrest) provides both constitutional and statutory bases for the taking of photographs and fingerprints independent of any municipal policy or custom. See *Maryland v King*, 569 US 435, 461; 133 S Ct 1958; 186 L Ed 2d 1 (2013) ("the Fourth Amendment allows police to take certain routine 'administrative steps incident to arrest—*i.e.*, . . . book[ing], photograph[ing], and fingerprint[ing.' "); see also MCL 28.243 (1) ("upon the arrest of a person for a felony or for a misdemeanor . . . the arresting law enforcement agency in this state shall collect the person's biometric data"); MCL 28.241a (defining "biometric data" as including "[f]ingerprint images" and "[d]igital images recorded during the arrest or booking process"); *People v Gill*, 31 Mich App 395, 399; 187 NW2d 707 (1971) ("Since the arrest was constitutionally permissible the subsequent fingerprinting was valid. . . . Given a valid arrest and providing the police conduct does not 'shock the conscience' of the court, it is entirely proper to fingerprint the accused.") (citations and footnote omitted).

-5-

We note parenthetically that Justice WILDER, joined by Justices MARKMAN and ZAHRA, stated in a concurring opinion that they would "specifically direct the Court of Appeals to decide on remand whether the complained-of 'policy or custom' was facially unconstitutional." *Johnson*, 502 Mich at 792 (WILDER, J., concurring).

> A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. [*Gregory v City of Louisville*, 444 F3d 725, 752 (CA 6, 2000), citing *Monell v New York City Dep't of Soc Servs*, 436 US 658, 692-94; 98 S Ct 2018; 56 L Ed 2d 611 (1978) (citations omitted).]

While the majority did not frame the issue in the fashion suggested by the concurring Justices, it stated, in response to the concurrence, that its opinion "should not be read as implying that whether the policy or custom identified by plaintiffs is facially constitutional or facially unconstitutional is irrelevant to this case as a whole," noting this Court "has yet to determine whether a constitutional violation occurred, much less whether the City's policy or custom is facially unconstitutional," *id*. at 780 n 14. The Court also noted that it was "express[ing] no opinion with regard to whether plaintiffs' Fourth Amendment rights were violated." *Id*. at 781.

We interpret our Supreme Court's direction to mean that we should determine whether the specific conduct authorized by the City's policy or custom, i.e., the conducting of P&Ps on the basis of reasonable suspicion (rather than probable cause), resulted in a constitutional violation. However, in addressing that question, we note that, in his concurring opinion, Justice WILDER observed that plaintiffs have disavowed the "deliberate indifference standard" necessary to prove their claim if the custom or policy at issue is facially lawful. *Johnson*, 502 Mich at 790 (WILDER, J., concurring); see also *Bd of County Comm'rs v Brown*, 520 US 397, 407; 117 S Ct 1382; 137 L Ed 2d 626 (1997) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.").[7] Specifically, Justice WILDER noted:

> Plaintiffs stated in their appellate brief that the municipality's failure to act was not at issue in this case. Plaintiffs' reply brief stated that the deliberate indifference standard was inapplicable. And in oral argument, plaintiffs explicitly disavowed the need to demonstrate deliberate indifference. [*Johnson*, 502 Mich at 790 n 5 (WILDER, J., concurring)]

---

Consequently, the P&P policy or custom at issue in this case is *only* relevant in the absence of probable cause.

[7] The Supreme Court majority found it "unnecessary to adopt or reject that interpretation of the controlling Supreme Court cases." *Johnson*, 501 Mich at 777.

Our review of the record confirms this. Moreover, the arguments presented by plaintiffs in their supplemental briefs on remand to this Court are, in our judgment, consistent with a purely "facial" (not an "as applied') constitutional challenge to the P&Ps.[8] That is because plaintiffs' challenge is not that a municipal policy or custom, though constitutional, was improperly applied in their particular cases in an unconstitutional manner. Rather, plaintiffs' position is that because the policy or custom authorized the conducting of P&Ps without probable cause, the policy or custom was itself necessarily and inherently, i.e., facially, unconstitutional. In other words, plaintiffs' claim is expressly that the policy or custom was itself unconstitutional *because* it authorized P&Ps on less than probable cause. That, in our judgment, is by its very nature a facial challenge.[9] While our Supreme Court majority has not yet taken a position on that characterization,[10] our judgment is that, by framing the alleged constitutional infirmity as the authorization of P&Ps in the absence of probable cause, the constitutional challenge is necessarily a facial one. A facially unconstitutional custom or policy is one that may not be applied constitutionally in any circumstance. See *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007). Consequently, and because plaintiffs' framing of the issue requires us to determine whether the employment of the P&Ps without probable cause constitutes a "search" under the Fourth Amendment, we conclude that our resolution of these cases on remand requires us to determine whether the P&Ps were facially constitutional.

---

[8] We therefore agree with plaintiffs that the deliberate indifference standard does not apply here. And because plaintiffs' constitutional challenge is purely a facial one (not an as-applied one), we need not decide the question that appears to have divided our Supreme Court, i.e., whether the deliberate indifference standard necessarily applies to every as-applied constitutional challenge.

[9] We appreciate that our Supreme Court has held that "a policy or custom that authorizes, but does not require, police officers to engage in specific conduct may form the basis for municipal liability" and that "when an officer engages in the specifically authorized conduct, the policy or custom itself is the moving force behind an alleged constitutional injury arising from the officer's actions." *Johnson*, 501 Mich at 757. However, the mere fact that individual officers have discretion over whether and when to implement an allegedly constitutionally infirm policy or custom (here, to conduct a P&P without probable cause) does not transform the constitutional challenge from a facial one into an as-applied one. To the contrary, the challenge remains to the policy or custom itself, not to the manner in which it was applied in a particular circumstance. To conclude otherwise would effectively hold a municipality liable whenever an individual officer decides to implement a challenged policy or custom. As our Supreme Court has recognized, however, that is not and cannot be the law. *Johnson*, 501 Mich at 763 ("[municipal] liability may not be based on a respondeat superior theory") (citations omitted).

[10] The Supreme Court majority concluded that "whether plaintiffs specifically claim that the P&P policy is itself facially unconstitutional is beside the point for the purposes of determining whether the . . . alleged violation of the plaintiffs' constitutional rights was the result of a policy or custom instituted or executed by the City." *Johnson*, 501 Mich at 779-780. It did not, however, make any judgment about whether plaintiffs' constitutional challenge was in fact a facial one. We conclude that it is.

## B. NO CONSTITUTIONAL VIOLATION

We conclude that the P&Ps were constitutionally permissible because, under current caselaw, no constitutionally-protected interest was violated.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV; see also *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011).

When the police obtain physical evidence from a person, the Fourth Amendment is implicated both in the initial " 'seizure' of the 'person' necessary to bring him into contact with government agents," and in "the subsequent search for and seizure of the evidence." *United States v Dionisio*, 410 US 1, 8; 93 S Ct 764, 769; 35 L Ed 2d 67 (1973). Generally, seizure requires probable cause; however, a "*Terry* stop," in which police stop and briefly detain a person based on a "reasonable suspicion" that criminal activity may have occurred, is permissible without probable cause. *Terry*, 392 US at 30. Therefore, "[t]he brief detention of a person following an investigatory stop is considered a reasonable seizure if the officer has a 'reasonably articulable suspicion' that the person is engaging in criminal activity." *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001), quoting *People v LoCicero (After Remand)*, 453 Mich 496, 501-502; 556 NW2d 498 (1996).

A person detained during a valid *Terry* stop does not lose the Fourth Amendment's protection against unreasonable searches, which applies to all seizures of a person, including seizures that involve only a brief detention, short of a traditional arrest. *People v Shabaz*, 424 Mich 42, 52; 378 NW2d 451 (1985). A search is unreasonable if it is not supported by a warrant or an exception to the warrant requirement; in either case, probable cause is still required. See *People v Davis*, 443 Mich 261, 265-266; 505 NW2d 201 (1993).[11] Plaintiffs do not dispute that they were detained in the course of a valid *Terry* stop. Therefore, the issue before us is whether either the fingerprinting portion or the photographing portion of the P&P procedure was a "search" under the Fourth Amendment. We conclude under current caselaw that they were not.

The United States Supreme Court has never explicitly decided whether the act of taking a person's fingerprints or photograph by police is "a search" under the Fourth Amendment. See *Maryland v King*, 569 US 425, 477; 133 S Ct 1958; 186 L Ed 2d 1 (2013) (SCALIA, J., dissenting) ("The Court does not actually say whether it believes that taking a person's fingerprints is a Fourth Amendment search, and our cases provide no ready answer to that

---

[11] An officer may, in the course of a *Terry* stop, conduct a "pat-down" for weapons based on a reasonable suspicion that the person is armed and dangerous. *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). No party argues that we should analyze the P&Ps under our jurisprudence related to this "stop-and-frisk" exception.

question.").[12]  We nonetheless must take heed of what the Supreme Court has said on the subject, even if in dicta.  See *FEB Corp v United* States, 818 F 3d 661, 690 n 10 (CA 11, 2016) (stating that "dicta from the Supreme Court is not something to be lightly cast aside, but rather is of considerable persuasive value") (quotation marks and citations omitted); *Surefoot, LC v Sure Foot Corp*, 531 F3d 1236, 1243 (CA 10, 2008) (noting that lower federal courts are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings") (quotation marks and citation omitted).

The Supreme Court has stated, for example, that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *United States v Katz*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967).[13]  And, while the Court has stopped short of deciding the issue, it has on more than one occasion suggested that obtaining fingerprints during *Terry* stops may be permissible, at least in certain circumstances.

In *Davis v Mississippi*, 394 US 721, 727; 89 S Ct 1394; 22 L Ed 2d 676 (1969), the Court suggested, albeit in dicta, that "[d]etentions for the sole purpose of obtaining fingerprints" could, "under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense."[14]  Later, in *United States v Dionisio*, 410 US 1, 14; 93 S Ct 764; 35 L Ed 2d 67 (1973), the Court stated, in the context of a compelled voice exemplar:

> The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear.  No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably

---

[12] The Supreme Court in *King* held that the taking of a DNA sample by buccal swab, incident to a lawful arrest, was "like fingerprinting and photographing" a reasonable procedure that was permissible under the Fourth Amendment.  *King*, 133 S Ct at 465-466.

[13] In *Katz*, the defendant successfully challenged the prosecution's introduction of "evidence of [the defendant's] end of [a] telephone conversation, overheard by FBI agents who had attached an electronic listening and recording device to the outside of the public telephone booth from which he had placed his calls."  *Katz*, 389 US at 348.

[14] The *Davis* Court ultimately concluded that the transport of the defendant unwillingly from his home to the police station for the purposes of fingerprinting and interrogation was a "seizure" requiring probable cause.  The Court explicitly did not determine whether, during a criminal investigation, fingerprints could be obtained in the absence of probable cause.  *Davis*, 394 US at 728.

expect that his face will be a mystery to the world. [*Id.*, 410 US at 14, citing *Katz*, 389 US at 351.][15]

The *Dionisio* Court also likened a voice exemplar to a fingerprint, thereby again suggesting that the taking of fingerprints is not a search under the Fourth Amendment. *Id*. at 15 ("this is like the fingerprinting in *Davis*, where, though the initial dragnet detentions were constitutionally impermissible, we noted that the fingerprinting itself 'involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.' "), citing to *Davis*, 394 US at 727.

Still later, in *Hayes v Florida*, 470 US 811, 186-187; 105 S Ct 1643; 84 L Ed 2d 705 (1985), the Court again suggested, but did not decide,[16] that the Fourth Amendment could permit the taking of fingerprints in the field based on reasonable suspicion:

> There is . . . support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch.

Several federal courts have declared that the taking of photographs and fingerprints by the police is not a search. See, e.g., *United States v Farias-Gonzalez*, 556 F3d 1181, 1188 (CA 11, 2009) ("The police can obtain both photographs and fingerprints without conducting a search under the Fourth Amendment."); *United States v Fagan*, 28 MJ 64, 66 (1989) ("[P]eople ordinarily do not have enforceable expectations of privacy in their physical characteristics which are regularly on public display, such as facial appearance, voice and handwriting exemplars, and fingerprints."); *In re Grand Jury Proceedings*, 686 F2d 135, 139 (CA 3, 1982) ("[F]ingerprints can be subject to compelled disclosure by the grand jury without implicating the Fourth Amendment . . . ."); *United States v Sechrist*, 640 F2d 81, 86 (CA 7, 1981) ("The taking of a

---

[15] In *Dionisio*, the voice exemplars were compelled by court orders issued under 18 USC 2518. The judge issuing such an order is required to determine that probable cause exists to believe that the individual affected by the order has committed, is committing, or will commit a particular offense. 18 USC 2518(3). The Court in *Dionisio* therefore did not face the issue of lack of probable cause that is present here. Nonetheless, the Court did make clear its conclusion that a grand jury's "directive to make a voice recording" did not "infringe[] upon any interest protected by the Fourth Amendment." *Dionisio*, 410 US at 15.

[16] The *Hayes* Court held that detention and transport to the police station for the purposes of fingerprinting was the functional equivalent of an arrest; it therefore did not resolve the issue of whether on-site fingerprinting during an investigatory stop was permissible under the Fourth Amendment. *Hayes*, 470 US at 186-187.

person's fingerprints simply does not entail a significant invasion of one's privacy.").[17] However, federal courts have also disapproved of the mass fingerprinting of citizens without *any* individual suspicion of criminal activity. See *United States v Mitchell*, 652 F3d 387, 411 (CA 3, 2011); *United States v $124,570 US Currency*, 873 F2d 1240, 1247 (CA 9, 1989).

This Court also has stated that "the taking of fingerprints is not violative of the prohibition against unreasonable searches and seizures," in part because "[t]here is no reasonable expectation of privacy in one's fingerprints." *Nuriel v Young Women's Christian Ass'n*, 186 Mich App 141, 146; 463 NW2d 206 (1990). The *Nuriel* Court elaborated that "the taking and furnishing of fingerprints does not represent an invasion of an individual's solitude or private affairs."

As we noted in *Johnson*, the issues before the *Nuriel* Court "did not involve police contact." *Johnson*, 319 Mich App at 617. Nonetheless, this statement from *Nuriel* is unambiguous and unqualified. *Nuriel* is binding on this Court. MCR 7.215(J)(1). Consequently, unless the above statements in *Nuriel* were dicta, *Nuriel* compels the conclusion that the taking of fingerprints as part of the P&Ps did not violate the Fourth Amendment. See *Allison v AEW Capital Management, LLP*, 481 Mich 419, 437; 751 NW2d 8 (2008).

We hold that the referenced determinations in *Nuriel* were not dicta. " '[O]biter dictum' is defined as '1. an incidental remark or opinion. 2. a judicial opinion in a matter related but not essential to a case.' " *Id.*, quoting Random House Webster's College Dictionary (1997).

In *Nuriel*, this Court considered whether the trial court had abused its discretion by denying the plaintiff's motion to compel fingerprint samples from nonparties to a civil lawsuit. The rationale of the trial court in denying that motion was as follows:

> Right now, you can take this on appeal. I do not think you are entitled to take fingerprints or blood samples of third parties or parties who are not part of a lawsuit. I am concerned about those parties who might be a part of the lawsuit- but go out and take fingerprints of other parties, no. I think it is an invasion of privacy and constitutionally impermissible. [*Nuriel*, 186 Mich App at 146.]

It was in that context that this Court granted leave to consider whether the trial court had abused its discretion. And because the only rationale given by the trial court for its ruling was a constitutional one, it was necessary for this Court to assess the trial court's constitutional reasoning to determine whether it reflected an abuse of discretion.

Only after determining that the trial court's stated reasoning was erroneous as a matter of constitutional law did the *Nuriel* Court ultimately uphold the trial court's denial of the plaintiff's

---

[17] Decisions of lower federal courts are not binding upon this Court, but may be persuasive. See *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). Although plaintiffs dismiss these cases with the cursory claim that they either "overstate the Supreme Court's dicta or did not actually decide whether fingerprinting was a search," they offer no contrary authority.

motion on the basis of a stipulated order between the parties. *Id.* at 148. We cannot conclude under the circumstances presented that this Court's ultimate reliance on an alternative basis for its ruling converted the Court's constitutional analysis into mere dicta. To hold otherwise would essentially mean that a reviewing Court's rejection of a trial court's reasoning in a "right result, wrong reason" case is always dicta, and we decline to so hold. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Moreover, because this Court is an error-correcting court that is "principally charged with the duty of correcting errors that occurred below," *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002) (citation omitted), the *Nuriel* Court was required to correct the trial court's constitutional error, at least when allowing it to stand could have affected the plaintiff's rights in the proceedings below.[18] Consequently, although it ultimately may have made no difference to the plaintiff's case, the *Nuriel* Court's correction of the trial court's error on the constitutional issue presented was not "incidental" or superfluous to the adjudication of the plaintiff's appeal, and we therefore reject plaintiffs' characterization of it as mere dicta.

Moreover, even if the *Nuriel*'s rejection of the trial court's constitutional holding was dicta, we find the analysis persuasive. The *Nuriel* Court's analysis comports with the statements to date from the United States Supreme Court and from the other cited federal cases, as well as other statements from this Court. See *People v Hulsey*, 176 Mich App 566, 569; 440 NW2d 59 (1989) (stating that "[a] defendant has no reasonable expectation of privacy in physical characteristics such as a fingerprint or a voice print, both of which are constantly exposed to the public."); *People v Davis*, 17 Mich App 615; 170 NW2d 274 (1969) (stating that "[f]ingerprints, like a man's name, height, color of his eyes, and physiognomy, are subject to non-custodial police inquiry, report and preservation when reasonable investigation requires, even though probable cause for arrest may not exist at the moment."). We therefore conclude that the fingerprint portion of the P&P procedure employed by the officers in these appeals did not violate the Fourth Amendment.[19]

---

[18] We note that, had the *Nuriel* Court decided the constitutional issue differently and affirmed the trial court on the basis of its constitutional ruling, the plaintiff would have been prohibited from seeking to compel any fingerprint samples from any nonparties; in the words of the trial court, such a compulsion would have been "an invasion of privacy and constitutionally impermissible." *Nuriel*, 186 Mich App at 145. By affirming the trial court on the alternative ground that a stipulated order barred the particular motion before the trial court, the plaintiff was not subject to such a broad prohibition. *Id.* at 148. The *Nuriel* case therefore does not implicate this Court's general rule that we will not "unnecessarily" decide constitutional issues, see *J&J Const Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003), because had the *Nuriel* Court left intact the trial court's ruling, the plaintiff's rights on remand would at least potentially have been affected.

[19] Plaintiffs seem to acknowledge that, under current caselaw, a "search" generally involves an intrusion into a constitutionally-protected area, such as a person's body or home. See, e.g., *Kyllo v United States*, 533 US 27, 34; 121 S Ct 2038; 150 L Ed 2d 94 (2001) (concluding that the use of a thermal imager to obtain information about the inside of a home was a search). They

Although plaintiffs suggest that this holding would not be consistent with *Davis*'s statement that "detention for the sole purpose of obtaining fingerprints . . . might, under narrowly defined circumstances, be found to comply with the Fourth Amendment" despite a lack of probable cause, see *Davis*, 394 US at 727, we find that argument unconvincing. First, the P&P procedure is not "a detention for the sole purpose of obtaining fingerprints;" rather, it is a tool used by police during an investigation into potential criminal activity, specifically when an individual's identity cannot be confirmed through other means. Moreover, in order to employ the P&P procedure without the consent of an individual, the officers must seize the individual in circumstances comprising, at least, a valid *Terry* stop prompted by a reasonable suspicion; this opinion does not afford, and should not be read as granting, police officers *carte blanche* to perform suspicionless P&Ps on any individual in public who catches their eye. We believe that these protections are sufficient to satisfy *Davis*'s "narrowly defined circumstances" requirement. Moreover, they comport with the Supreme Court's statement in *Hayes* that "[t]here is . . . support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act," provided that the fingerprinting is reasonably necessary to the investigation and the procedure is done "with dispatch." *Hayes*, 470 US at 186-187.

The rationale of *Nuriel* and the other cited cases applies at least equally to the taking of photographs. A person's physical appearance is certainly something "a person knowingly exposes to the public." *Katz*, 389 US at 351. Although a person does possess certain property rights to his or her likeness, at least in a commercial sense, see *Doe v Mills*, 212 Mich App 73, 80; 536 NW2d 824 (1995); see also *Lewis v LeGrow*, 258 Mich App 175, 193; 670 NW2d 675 (2003), we cannot reasonably declare the taking of a photograph of plaintiffs that merely depicts them as they appeared in public to be a search under the Fourth Amendment. We therefore

---

therefore primarily confine their argument to what they term "biometric data," such as fingerprints, which they assert is constitutionally protected because its collection relies on technology other than the naked eye. However, the fact that the use of some forms of "sense-enhancing" technology has been deemed to constitute a search does not mean that *all* information that cannot be gleaned using only a human being's natural senses constitutes a search, especially when the existing caselaw points in the other direction. Moreover, the definition of "biometric data" in MCL 28.241a includes such things as scars and tattoos, which are visible to the naked eye. We conclude that the mere fact that the collection of the information at issue involves the use of technology does not, itself, convert that collection into a search under the Fourth Amendment. Plaintiffs have provided no authority to the contrary. And although plaintiffs argue that the "ever-increasing developmental pace of identification technology magnifies the civil liberties impact of concluding that using such identification technologies is not a search," we must also be cognizant of the United States Supreme Court's caution that "[t]he judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." *City of Ontario v Quon*, 560 US 746, 759; 130 S Ct 2619; 177 L Ed 2d 216 (2010).

conclude that the photograph portion of the P&Ps employed by the officers in these appeals also did not violate the Fourth Amendment.[20]

Because we conclude that the P&Ps did not infringe on plaintiffs' Fourth Amendment protections (given that, as plaintiffs concede, they were validly detained) we further conclude that plaintiffs have failed to satisfy their burden of demonstrating that the custom or policy at issue here, i.e., the photographing and printing of individuals during an investigatory stop based on reasonable suspicion but without probable cause, was unconstitutional.

## IV. RESPONSE TO SUPPLEMENTAL AUTHORITY

While this case was pending on remand, plaintiffs filed supplemental authority directing this Court to the Sixth Circuit's recent decision in *Taylor v Saginaw*, 922 F3d 328 (CA 6, 2019). In *Taylor*, the Sixth Circuit held that the defendant's practice of making chalk marks on parked vehicles' tires to determine whether the vehicles had been parked longer than the posted time limit was a search under the Fourth Amendment. *Taylor*, 922 F3d at 322. The Sixth Circuit applied the "seldom used 'property-based' approach to the Fourth Amendment search inquiry in *United States v Jones*, 565 US 400; 132 S Ct 945; 181 L Ed 2d 911 (2012)," noting that, "under *Jones*, when governmental invasions *are* accompanied by physical intrusions, a search occurs when the government: (1) trespasses upon a constitutionally protected area, (2) to obtain information." *Id*. (citation omitted, emphasis in original).

Plaintiffs argue that fingerprinting is a physical intrusion on a constitutionally protected area and is therefore a search under *Jones*. This Court has not found, and plaintiffs have not

_____

[20] In their supplemental brief on remand, plaintiffs briefly argue that the City's alleged *retention* of the photographs and fingerprints "causes an ongoing intrusion that is beyond the permissible scope of the stop." We conclude that this issue is beyond the scope of our Supreme Court's remand, and we therefore decline to address it. Moreover, we are cautious of the principle that we should "neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." See *In re Forfeiture of 2000 GMC Denali and Contents*, 316 Mich App 562, 570 n 3; 892 NW2d 388 (2016) (quotation marks and citations omitted). Whether or for how long the City may have retained plaintiffs' photographs or fingerprints is undetermined. We will not engage in fact-finding, see *Wolf v Detroit*, 489 Mich 923, 923; 797 NW2d 136 (2011), nor will we remand for additional fact-finding in the current context, see MCR 7.216(A)(5). Not only are plaintiffs' arguments conclusory and beyond the scope of the Supreme Court's remand, but plaintiffs' assertions regarding the alleged retention of the photographs and fingerprints have always been ancillary to and hinged upon plaintiffs' challenge to the photographs and fingerprints as having been obtained as a result of an unlawful search. Because we have concluded that, under our current caselaw, the P&Ps were not "searches" under the Fourth Amendment, we need not address the issue further. Any challenge to the alleged retention of the photographs and fingerprints separate and apart from whether they were unconstitutionally obtained in the first instance is an issue for another day.

provided, cases in which the "trespass" theory has been applied to the collection of fingerprints or the taking of pictures; rather, *Jones* and its progeny typically involve the government's warrantless placement of electronic monitoring devices that collect location data for persons or property, see, e.g., *United States v Powell*, 847 F3d 760 (CA 6, 2017), although the rationale of *Jones* has been applied by our Supreme Court in the context of a police intrusion onto a homeowner's property for the purpose of gathering information (i.e. "knock and talk"), see *People v Frederick*, 500 Mich 228; 895 NW2d 541 (2017). Indeed, Justice SCALIA, who authored *Jones* in 2012, observed the very next year that the Supreme Court had never explicitly decided the issue of whether the taking of fingerprints constituted a search under the Fourth Amendment. See *King*, 133 S Ct at 1987 (SCALIA, J., dissenting). In the absence of any compelling authority to the contrary, we see no reason to alter our conclusions in light of *Taylor*, which is not only not binding on this Court, *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (20043), but is significantly distinguishable, both factually and legally.

## V. CONCLUSION

We conclude that the P&Ps at issue did not violate plaintiffs' Fourth Amendment rights under current caselaw, and accordingly affirm the trial court's orders granting summary disposition in favor of the City.

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien